## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **KINSALE INSURANCE COMPANY** | * | |
| **Plaintiff** | * | |
| | * | |
| **vs.** | * | **Case No. _____** |
| | * | |
| **NOUSBO USA, INC., BEN POINTER,** | * | |
| **JUN LEE, THOMAS MERRELL** | * | |
| **AUBREY, and THE PLANT** | * | |
| **FACTORY, INC.** | * | |
| **Defendants** | * | |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Kinsale Insurance Company files this Complaint for Declaratory Judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*., seeking a determination of its rights and obligations pursuant to two primary insurance policies and two excess insurance policies previously issued to Defendant Nousbo USA, Inc. with respect to claims by Defendants Thomas Merrell Aubrey and The Plant Factory, Inc. Kinsale alleges as follows:

### THE PARTIES

1.  Plaintiff Kinsale is an insurance company and a corporation organized under the laws of the State of Arkansas with its principal place of business in the Commonwealth of Virginia.

2.  Defendant Nousbo USA, Inc., is a Delaware corporation with its principal place of business in the State of Texas.

3.  Defendant Ben Pointer is a citizen of Alabama residing in Mobile County, Alabama. At relevant times, Pointer was an employee of Nousbo USA.

1

4.     Defendant Jun Lee is a citizen of Texas residing in Harris County, Texas. At relevant times, Lee was employed by Nousbo USA as Managing Director, NA.

5.     Defendant The Plant Factory, Inc., is an Alabama corporation with its principal place of business, a plant farm, located in Mobile County, Alabama.

6.     Defendant Thomas Merrell Aubrey is a citizen of Alabama residing in Mobile County, Alabama. Aubrey is a co-owner and president of Plant Factory.

<u>**JURISDICTION AND VENUE**</u>

7.     This Court has jurisdiction over this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. Subject matter jurisdiction over this action exists under 28 U.S.C. § 1332 because there exists complete diversity of citizenship between Plaintiff and Defendants, and because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

8.     Venue for this Declaratory Judgment action is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391 because the events giving rise to the claimed injuries and damages to Aubrey and Plant Factory, Inc. allegedly occurred in this District and litigation concerning those damages is pending in state court in this District.

<u>**THE PRIMARY INSURANCE POLICIES**</u>

9.     Kinsale previously issued to Nousbo USA an Environmental Combined Liability Policy bearing the policy number 0100129923-3, effective from October 16, 2023, to October 16, 2024. A true copy of Policy 0100129923-3 is attached as ***Exhibit 1***. Certain confidential information that is irrelevant to this lawsuit, such as the cost of the policy,

has been redacted from that document. For ease of reference, "Bates label" numbers KAF000001-KAF000094 have been added to the document.

10.   Kinsale also previously issued to Nousbo USA an Environmental Combined Liability Policy bearing the policy number 0100129923-4, effective from October 16, 2024, to October 16, 2025. A true copy of Policy 0100129923-4 is attached as ***Exhibit 2***. Certain confidential information that is irrelevant to this lawsuit, such as the cost of the policy, has been redacted from that document. For ease of reference, "Bates label" numbers KAF000095-KAF000189 have been added to the document.

11.   Both Policies identify Nousbo USA as a corporation in the business type section of the Common Declarations. (***Ex.1*** at KAF000001; ***Ex.2*** at KAF000096)

12.   Both Policies contain a COMMERCIAL GENERAL LIABILITY COVERAGE SUPPLEMENTAL DECLARATION (Form ECPSD1000 0619) stating that 10/16/2020 is the Retroactive Date for Claims Made Coverage. (***Ex.1*** at KAF000003; ***Ex.2*** at KAF000097)

13.   Both Policies contain a COMMERCIAL GENERAL LIABILITY COVERAGE FORM (Form CG 00 02 04 13) that states in relevant part as follows:

> ***COVERAGES A AND B PROVIDE CLAIMS-MADE COVERAGE.***
> ***PLEASE READ THE ENTIRE POLICY CAREFULLY.***

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the "Named Insured" shown on the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

3

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.    Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

* * *

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1.    Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of " personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. …

***

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

***

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. …

***

**2.** Each of the following is also an insured:

**a.** … your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) …,

4

but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. …

***

## SECTION VI – DEFINITIONS

***

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
    **a.** False arrest, detention or imprisonment;
    **b.** Malicious prosecution;
    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
    **f.** The use of another's advertising idea in your "advertisement"; or
    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

***

**17.** "Property damage" means:
    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(***Ex.1*** at KAF000007, KAF000012, KAF000015-KAF00016, KAF000022, and KAF000023; ***Ex.2*** at KAF000101, KAF000106, KAF000109-KAF000110, KAF000116, and KAF000117)

14.      Both Policies contain an endorsement (Form CAS2008 0110), titled **AMENDED DUTIES IN THE EVENT OF A CLAIM OR SUIT (COMMERCIAL GENERAL**

**LIABILITY - CLAIMS MADE)** that amend **Section IV** paragraph **2** of the

COMMERCIAL GENERAL LIABILITY FORM to state as follows:

**2. Duties In The Event Of A "Claim" Or "Suit"**

The insured shall provide written notice to us as soon as practicable following receipt of any "claim" or "suit". The insured shall also include in such written notice, details of the "claim" or "suit".

If a "claim" or "suit" is received by any insured, the insured must:
1. Immediately record the specifics of the "claim" or "suit" and the date received; and
2. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit".

(*Ex.1* at KAF000039; *Ex.2* at KAF000133)

15.    Both Policies include a NOTICE – WHERE TO REPORT A CLAIM that states as

follows:

It is important that losses, claims, or incidents (if incident reporting is permitted under the Policy) are reported in writing and directly to the Claims Department at Kinsale Insurance Company. Reporting losses, claims, or incidents to an insurance agent or broker is not notice to the Kinsale Insurance Company Claims Department. Failure to report directly to Kinsale Insurance Company's Claims Department may jeopardize coverage under the Policy. …

(*Ex.1* at KAF000004 (Form ADF9013 0323); *Ex.2* at KAF000098 (Form ADF9013

0524)) These notices provide an email address (newclaimnotices@kinsaleins.com),

post office box mailing address, and street address for Kinsale's Claims Department.

(*Id.*) Policy 0100129923-3 also provided a fax number option for reporting, while

Policy 0100129923-4 provided an online website claim reporting option. (*Id.*)

16.    Both Policies contain an endorsement (Form CAS2009 1111), titled **GENERAL**

**LIABILITY CHANGES – CLAIMS MADE TO CLAIMS MADE AND**

**REPORTED**, which deletes subparagraphs **b.** and **c.** from paragraph **1. Insuring**

**Agreement** in both Coverage A and Coverage B and replaces those subparagraphs with the following:

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period;

**(3)** A "claim" for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section V-Extended Reporting Periods; and

**(4)** A "claim" for damages because of the "bodily injury" or "property damage" is first reported in writing to the Company during the policy period.

**c.** A "claim" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **1.a** of the Insuring Agreement.

All "claims" for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those "claims" is made against any insured.

All "claims" for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured.

\* \* \*

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if:

**(1)** The offense was committed in the "coverage territory";

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period;

**(3)** A "claim" for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Section V-Extended Reporting Periods; and

**(4)** A "claim" for damages because of the "personal and advertising injury" is first reported in writing to the Company during the policy period.

**c.** A "claim" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph 1.a of the Insuring Agreement.

All "claims" for damages because of "personal and advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of those "claims" is made against any insured.

(*Ex.1* at KAF000040-KAF000041; *Ex.2* at KAF000134-KAF000135)

17.    The endorsement (Form CAS2009 1111) in both Policies, titled **GENERAL LIABILITY CHANGES – CLAIMS MADE TO CLAIMS MADE AND REPORTED**, amends Section **VI** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** to add a definition for the term "Claim", as follows:

**SECTION VI-DEFINITIONS** is amended by adding the following:

"Claim" means a written demand for services or monetary damages.

(*Ex.1* at KAF000041; *Ex.2* at KAF000135)

18.    Both Policies contain an endorsement (Form ECPGEN0001 1022) that states additional exclusions in relevant part as follows:

In consideration of payment of the premium, and subject to all the terms, conditions and limitations of this Policy, we agree with you as follows:

***

### C.  COMMON EXCLUSIONS

The Common Exclusions below apply to each and every Coverage Part of this Policy. If any provision in these Common Exclusions is inconsistent or conflicts with the terms or conditions of any Coverage Part, these Common Exclusions shall control. …

***

**Duty To Defend Exclusion**

Where there is no coverage under this Policy, there is no duty to defend.

 (*Ex.1* at KAF000025-KAF000026; *Ex.2* at KAF000119-KAF000120)

19.    Both Policies contain an endorsement (Form ADF2000 0622), titled **POLICY AMENDMENT – EXTRINSIC EVIDENCE**, that states in relevant part as follows:

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

Notwithstanding any provision of this Policy to the contrary, all Insuring Agreements in all Coverage Forms, Coverage Sections, Coverage Parts, or endorsements included in this Policy are amended by adding the following:

> Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit.

(*Ex.1* at KAF000036; *Ex.2* at KAF000130)

T<small>HE</small> E<small>XCESS</small> I<small>NSURANCE</small> P<small>OLICIES</small>

20.    Kinsale issued to Nousbo USA a Commercial Excess Liability Policy bearing the policy number 0100130011-3, effective from October 16, 2023, to October 16, 2024. A true copy of Policy 0100130011-3 is attached as *Exhibit 3*. Certain confidential information that is irrelevant to this lawsuit, such as the cost of the policy, has been

9

redacted from that document. For ease of reference, "Bates label" numbers KAF000190-KAF000243 have been added to the document.

21. Kinsale also issued to Nousbo USA a Commercial Excess Liability Policy bearing the policy number 0100130011-4, effective from October 16, 2024, to October 16, 2025. A true copy of Policy 0100130011-4 is attached as **_Exhibit 4_**. Certain confidential information that is irrelevant to this lawsuit, such as the cost of the policy, has been redacted from that document. For ease of reference, "Bates label" numbers KAF000244-KAF000300 have been added to the document.

22. Policy 0100130011-3 identifies Policy 0100129923-3 as the "primary insurance" on the SCHEDULE OF UNDERLYING INSURANCE (Form CAX1001 0224). (**_Ex.3_** at KAF000193).

23. Policy 0100130011-4 identifies Policy 0100129923-4 as the "primary insurance" on the SCHEDULE OF UNDERLYING INSURANCE (form CAX1001 0224). (**_Ex.4_** at KAF000247).

24. Both Policy 0100130011-3 and Policy 0100130011-4 contain COMMERCIAL EXCESS LIABILITY POLICY PROVISIONS (Form CAX0001 0817) that state in relevant part as follows:

**SECTION I- COVERAGE**

**A. INSURING AGREEMENT**

We will pay on behalf of the Named Insured those sums in excess of the "underlying insurance" that you become legally obligated to pay as damages because of injury or property damage to which this insurance applies, provided that the damages would be covered by the "underlying insurance(s)", but for the exhaustion of the applicable Limits of Insurance.

This policy shall follow the terms, definitions, conditions and exclusions of the "primary insurance" and of any other "underlying insurance" only to the extent

coverage is further limited or restricted by the terms and conditions of such other "underlying insurance"; subject always to the policy period, policy limits, premiums and all other terms, definitions, conditions and exclusions of this policy.  If any provisions of the "underlying insurance" conflict with any provisions of this policy, the provisions of this policy will apply.

This policy will not, in any event, provide broader coverage than that provided by the "underlying insurance".

**B. DEFENSE, INVESTIGATION, SETTLEMENT**

1.  When the Limit of Insurance of "underlying insurance" have not been exhausted, the Company will have the right but not the duty to participate in the investigation, defense and settlement of claims or suits against you seeking damages because of injury or damage to which this insurance might apply. If a claim or suit is settled within the limits of insurance of the "underlying insurance(s)", no costs will be payable by the Company.

(*Ex.3* at KAF000194; *Ex.4* at KAF000248)

25.    Both Policy 0100130011-3 and Policy 0100130011-4 contain an endorsement (Form

ADF2000 0622), titled POLICY AMENDMENT - EXTRINSIC EVIDENCE that

states in relevant part as follows:

Notwithstanding any provision of this Policy to the contrary, all Insuring Agreements in all Coverage Forms, Coverage Sections, Coverage Parts, or endorsements included in this Policy are amended by adding the following:

Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit.

(*Ex.3* at KAF000205; *Ex.4* at KAF000259)

### The Underlying Facts and Lawsuit

26.    On November 27, 2024, Aubrey and Plant Factory filed a Complaint in the Circuit

Court of Mobile County, Alabama, against Nousbo USA, Pointer, and Lee, which

was assigned case number 02-cv-2024-903077. A true copy of the lawsuit Complaint is attached as **Exhibit 5**.

27.  The causes of action asserted in the Complaint are (1) violation of the Alabama Extended Manufacturer's Liability Doctrine, (2) product liability, (3) negligence, (4) breach of warranty, (5) breach of implied warranties, (6) innocent misrepresentation, (7) negligent misrepresentation, and (8) reckless misrepresentation.

28.  The Complaint alleges that Nousbo USA is engaged in the design, manufacturing, blending, marketing, and sale of fertilizer products, including Nousbo HI-COTE 360 19-4-12. (**Ex.5** ¶3)

29.  The Complaint alleges that Lee and Pointer engaged in marketing and sales of fertilizer products, including Nousbo HI-COTE 360 19-4-12. (**Ex.4** ¶¶4-5)

30.  The Complaint alleges that Plant Factory has twenty-two acres of land at its nursery on which it grows hundreds of plants that it sells to customers. (**Ex.5** ¶8)

31.  The Complaint alleges that from May 2022 through April 2024, Plant Factory purchased hundreds of bags of Nousbo HI-COTE 360 19-4-12 fertilizer from Nousbo based on representations by Pointer and Lee that it would perform as well or better than Nutricote, the fertilizer that Plant Factory had used in the past and used the fertilizer as advised by Pointer and Nousbo sales representatives. (**Ex.5** ¶¶9-15)

32.  The Complaint alleges that from October 2023 through April 2024 Plant Factory purchased Nousbo HI-COTE 360 19-4-12 fertilizer that had been manufactured on May 22, 2024. (**Ex.5** ¶16) The Complaint alleges: "After applying this batch of HI-COTE fertilizer to the plants, the plants that were supposed to be sold in Spring 2024 were not progressing at their normal growth rate, they also appeared off color, stunted,

and with insufficient root growth." (***Ex.5*** ¶16) The Complaint alleges Plant Factory and Aubrey "made Nousbo USA, Inc., and its agents aware of this." (***Ex.5*** ¶16)

33.  The Complaint alleges: "Throughout 2023 and 2024, Aubrey has learned about all types of damage to his plants, some of which were planted at customers' jobs and had to be replaced due to the fact that they did not take root and failed to grow. In addition, Aubrey has stunted plants throughout Plant Factory's nursey." (***Ex.5*** ¶19)

34.  The Complaint alleges: "the fertilizer began causing damage to Aubrey's property and by early 2024, plants fertilized with HI-COTE were not healthy enough to be sold." (***Ex.5*** ¶17)

35.  The Complaint alleges: "In September of 2024, Aubrey purchased thousands of new plants to cover the damaged orders from Spring 2024." (***Ex.5*** ¶17)

36.  On August 19, 2024, Aubrey emailed Lee and Pointer to share pH and EC readings concerning the plants, characterizing the readings as "off the chart."

37.  On August 30, 2024, Lee emailed Aubrey (copying Pointer) and stated in pertinent part as follows:

Thank you for agreeing during our phone conversation last Thursday to send me the report on the issues we discussed. To recap, you mentioned that all plants since last October, when you fully converted to our product in your nursery, have been affected by the following issues:

- Fertilizer dumping: This allegedly caused a pH drop, damaging the plants and eventually leading you to add lime.
- Longevity issue: Initial growth was fine, but after 3-4 months, the fertilizer seemed to lose its effectiveness.

38.  On September 25, 2024, Aubrey emailed Lee and Pointer, stating in relevant part:

After visiting my nursery and observing the damage firsthand, both you and Ben agreed that no active fertilizer remained in the potted containers across the whole nursery from October until now. There is great evidence of no root growth, clorotic foliage, and dying plants. Even more disappointing is that you or Ben didn't bother

to revisit and evaluate my nursery after we applied lime and Hicote 100-day fertilizer to see if there were any changes in my plants.

39.    The Complaint alleges: "Around August of 2024, Aubrey purchased lime, hired someone to apply the lime, and repotted the damaged plants, which was an extra cost to Plaintiffs, in an effort to repair the damage done by the defective HI-COTE 360 19-4-12 fertilizer." (***Ex.5*** ¶17)

40.    On August 29, 2024, Aubrey sent a Plant Factory invoice to Nousbo USA, via email to Lee and Pointer, for $1,342.75 seeking payment for lime costs, labor costs, and distilled water costs for the period of August 19 to 23, 2024.

41.    This August 29, 2024 written demand for monetary damages from Aubrey and Plant Factory was not reported in writing to Kinsale during the policy period for Policy 0100129923-3 and Policy 0100130011-3.

42.    On September 3, 2024, Aubrey sent a Plant Factory invoice to Nousbo USA, via email to Lee and Pointer, for $2,137.24 seeking payment for lime costs, labor costs, and distilled water costs for the period of August 24 to August, 31, 2024.

43.    This September 3, 2024 written demand for monetary damages from Aubrey and Plant Factory was not reported in writing to Kinsale during the policy period for Policy 0100129923-3 and Policy 0100130011-3.

44.    On October 2, 2024, Aubrey sent a Plant Factory invoice to Nousbo USA, via email to Lee and Pointer, for $3,536.23, seeking the past due amounts on the two previous invoices for lime costs, labor costs, and distilled water costs and an additional $56.24 finance charge.

45.    This October 2, 2024 written demand for monetary damages from Aubrey and Plant Factory was not reported in writing to Kinsale during the policy period for Policy 0100129923-3 and Policy 0100130011-3.

46.    On October 3, 2024, Lee emailed Aubrey (copying Pointer) rejecting the October 2, 2024 invoice and saying in relevant part: "It is important to note that sending an invoice without prior agreement or authorization may raise legal concerns, as it could be considered an attempt to improperly claim payment."

47.    On November 1, 2024, Aubrey sent a Plant Factory invoice to Nousbo USA, via email to Lee and Pointer, for $3,588.55, seeking the past due amounts on the two previous invoices for lime costs, labor costs, and distilled water costs, the October $56.24 finance charge, and a new $52.32 finance charge.

48.    This November 1, 2024 written demand for monetary damages from Aubrey and Plant Factory was not reported in writing to Kinsale during the policy period for Policy 0100129923-4 and Policy 0100130011-4.

49.    On November 4, 2024, Lee emailed Aubrey (copying Pointer) rejecting the November 1, 2024 invoice and saying in relevant part: "Please be aware that sending an invoice without prior agreement could raise legal concerns, as it may be viewed as an improper claim for payment."

50.    A claim for damages against Nousbo USA or its employees relating to the allegations in the Lawsuit was reported in writing to Kinsale for the first time on December 4, 2024, when Kevin Lee Co. Insurance Services sent a copy of the Complaint by email to newclaimnotices@kinsaleins.com.

51.   Neither Nousbo USA, Lee, nor Pointer reported in writing to Kinsale any claim by Aubrey or Plant Factory before December 4, 2024.

52.   Kinsale is defending Nousbo USA, Lee, and Pointer against the lawsuit under a reservation of rights.

53.   An actual controversy exists regarding Kinsale's obligations and duties, if any, under Policy 0100129923-3, Policy 0100129923-4, Policy 0100130011-3, and Policy 0100130011-4 with respect to Aubrey's and Plant Factory's claims in the lawsuit.

## COUNT ONE

54.   Kinsale incorporates by reference and restates the allegations of paragraphs 1-53 as though fully set forth herein.

55.   Policy 0100129923-3's commercial general liability insuring agreements state that "property damage" or "personal and advertising injury" are covered only if: 1) a claim for such damages is first made to an insured during the policy period and; 2) a claim for such damages is first reported in writing to Kinsale during the policy period.

56.   Policy 0100130011-3 follows form and adopts the insuring agreement provisions of Policy 0100129923-3.

57.   The Policies expressly provide that all "claims" for damages because of "property damage" or "personal and advertising injury" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured.

58.   Kinsale requests a declaration that Kinsale owes no duty to defend or duty to indemnify Nousbo USA, Lee, or Pointer under Policy 0100129923-3 because (1) a

claim for damages was first made to an insured on August 29, 2024, but (2) the claim for damages was not first reported in writing to Kinsale during the policy period of October 16, 2023 to October 16, 2024 because it was reported in writing to Kinsale for the first time on December 4, 2024.

59. Kinsale requests a declaration that Kinsale owes no duty to indemnify Nousbo USA, Lee, or Pointer under Policy 0100130011-3 because a claim for damages was not first reported in writing to Kinsale during the policy period of October 16, 2023 to October 16, 2024.

## COUNT TWO

60. Kinsale incorporates by reference and restates the allegations of paragraphs 1-53 as though fully set forth herein.

61. Policy 0100129923-4's commercial general liability insuring agreements state that "property damage" or "personal and advertising injury" are covered only if: 1) a claim for such damages is first made to an insured during the policy period and; 2) a claim for such damages is first reported in writing to Kinsale during the policy period.

62. Policy 0100130011-4 follows form and adopts the insuring agreement provisions of Policy 0100129923-4.

63. The Policies expressly provide that all "claims" for damages because of "property damage" or "personal and advertising injury" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured.

64. Kinsale requests a declaration that Aubrey and Plant Factory first made a "claim" (as defined by Policy 0100129923-4) when Aubrey sent Nousbo USA, Lee, and Pointer an invoice on August 29, 2024 seeking money for the extra costs of applying lime to plants allegedly damaged the HIC-COTE fertilizer.

65. Kinsale requests a declaration that Kinsale owes no duty to defend or duty to indemnify Nousbo USA, Lee, or Pointer under Policy 0100129923-4 because a claim was first made to one or more insureds on August 29, 2024, which was before Policy 0100129923-4's policy period began on October 16, 2024.

66. Kinsale requests a declaration that Kinsale owes no duty to indemnify Nousbo USA, Lee, or Pointer under Policy 0100130011-4 because a claim for damages was first made to one or more insureds before Policy 0100130011-4's policy period began on October 16, 2024.

## COUNT THREE

67. Kinsale incorporates by reference and restates the allegations of paragraphs 1-53 as though fully set forth herein.

68. The Complaint does not allege any facts showing or supporting any claim or cause of action against Nousbo USA, Lee, or Pointer for false arrest, detention or imprisonment; malicious prosecution; wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; oral or written

publication, in any manner, of material that violates a person's right of privacy; use of another's advertising idea in an insured's "advertisement"; or infringing upon another's copyright, trade dress or slogan in an insured's "advertisement" (as those terms are defined in the Policies).

69. Additionally, the Policies define "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." The Complaint alleges damages arising out of the failure of goods, products or services to conform with any statement of quality or performance made in an "advertisement" of Nousbo USA.

70. Policy 0100130011-3 and Policy 0100130011-4 follow form and adopts the provisions, definitions, and exclusions of Policy 0100129923-3 and Policy 0100129923-4 respectively.

71. Kinsale requests a declaration that Kinsale owes no duty to defend or duty to indemnify Nousbo USA, Lee, or Pointer under Commercial General Liability Coverage B of Policy 0100129923-3 or Policy 0100129923-4 because the Complaint does not allege any "personal and advertising injury" caused by an "offense" as defined by those policies.

72. Kinsale requests a declaration that Kinsale owes no duty to indemnify Nousbo USA, Lee, or Pointer under Policy 0100130011-3 or Policy 0100130011-4 because the Complaint does not allege any "personal and advertising injury" caused by an "offense."

73.  In the alternative, Kinsale requests a declaration that Kinsale owes no duty to defend or duty to indemnify Nousbo USA, Lee, or Pointer under Commercial General Liability Coverage B of Policy 0100129923-3 or Policy 0100129923-4 because the Complaint alleges damages arising out of the failure of goods, products or services to conform with any statement of quality or performance made in an "advertisement" of Nousbo USA.

74.  In the alternative, Kinsale requests a declaration that Kinsale owes no duty to indemnify Nousbo USA, Lee, or Pointer under Commercial General Liability Coverage B of Policy 0100130011-3 or Policy 0100130011-4 because the Complaint alleges damages arising out of the failure of goods, products or services to conform with any statement of quality or performance made in an "advertisement" of Nousbo USA.

*PRAYER FOR RELIEF*

**WHEREFORE**, Defendant Kinsale Insurance Company prays for the following relief:

1.  The Court enter a judgment declaring the rights and obligations of each party with regard to the dispute.

2.  The Court enter a judgment declaring that a claim for damages was not first reported in writing to Kinsale during the policy period of Policy 0100129923-3 and Policy 0100130011-3 because it was reported in writing to Kinsale for the first time on December 4, 2024.

3. The Court enter a judgment declaring a claim for monetary damage was first made to an insured on August 29, 2024, before the October 16, 2024 inception date of Policy 0100129923-4 and Policy 0100130011-4.

4. The Court enter a judgment declaring the Complaint does not allege any "personal and advertising injury" caused by an "offense" as defined by Policy 0100129923-3 and Policy 0100129923-4.

5. The Court enter a judgment declaring that the Complaint alleges damages arising out of the failure of goods, products or services to conform with any statement of quality or performance made in an "advertisement" of Nousbo USA.

6. The Court enter a judgment declaring that Kinsale does not owe any obligation or duty to defend Nousbo USA, Inc., Jun Lee, or Ben Pointer against Aubrey's and Plant Factory's lawsuit.

7. The Court enter a judgment declaring that Kinsale does not have any obligation or duty to indemnify or provide coverage for Aubrey's and Plant Factory's injuries and damages.

8. The Court award Kinsale its costs of this action and such other relief as this Court deems appropriate under the circumstances.

Respectfully submitted,

*/s/ Scott Hetrick*
R. Scott Hetrick (ASB No.5277E63R)
ADAMS & REESE, LLP
11 North Water St., Ste.23200
Mobile, Alabama 36602
Phone (251) 650-0852
Fax (251) 650-2060
Email scott.hetrick@arlaw.com
Attorneys for Plaintiff
Kinsale Insurance Company

PLEASE SERVE DEFENDANTS
Nousbo USA, Inc.
c/o Northwest Registered Agent Service, Inc.
212 W. Troy Street, Suite B
Dothan, AL 36303

Ben Pointer
9086 Church Street
Semmes, AL 36575

Jun Lee
2100 West Loop South, Suite 625
Houston, TX 77027

The Plant Factory, Inc.
c/o Thomas M. Aubrey, Registered Agent
6121 McDonald Road
Theodore, AL 36582

Thomas Merrell Aubrey
6121 McDonald Road
Theodore, AL 36582